# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

|  |  |
|---|---|
| MATGARITO LAGUNAS-SALAZAR, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> DALE SUMMERLIN, *et al.*, <br><br> Defendants. | 2:12–cv–867–APG–VCF <br><br> **ORDER** |

This matter involves a car accident between Plaintiff Matgarito Lagunas-Salazar and Defendant Dale Summerlin, an employee of Defendant Rockwell Collins. Before the court are Lagunas-Salazar's motion to compel (#49[1]) and Rockwell Collins' motion for sanctions (#51). For the reasons discussed below, Lagunas-Salazar's motion is granted and Rockwell Collins' motion is denied.

## BACKGROUND

For the purpose of the parties' motions, the relevant facts include the circumstances surrounding the collision and the discovery dispute before the court. Both are discussed below.

**I.  The Collision**

On November 7, 2009, Plaintiff Matgarito Lagunas-Salazar was driving southbound on Nellis Boulevard in Las Vegas, Nevada. (Supplement (#61) Exhibit A at ¶¶ 9, 11).[2] Lagunas-Salazar was driving his 1996 Volkswagen Jetta; and his wife, Plaintiff Clementina Monroe-Miranda, and two children, Plaintiff Michelle Monroe and nonparty Edwin Monroe, were riding along. (*Id.* at ¶¶ 1, 10).

---

[1] Parenthetical citations refer to the court's docket.
[2] As discussed during the court's January 17, 2014 hearing, prior defense counsel did not attach the operative complaint to Defendants' notice of removal. (Mins. Proceedings #60). Current defense counsel corrected this error. (*See* Supplement (#61) at Exhibit A).

1

Meanwhile, Defendant Dale Summerlin was driving northbound on Nellis Boulevard. (*Id*. at ¶ 12). Summerlin, an employee of Defendant Rockwell Collins, was driving a 2009 Ford Focus, which he rented from Alamo Rent a Car. (*Id*. at ¶ 9). Summerlin was visiting Las Vegas for work. (*Id*. at ¶ 8).

As the cars approached, Summerlin turned left towards a shopping-complex parking lot. (*Id*. at ¶ 12). The left turn was allegedly negligent. (*Id*. at ¶¶ 12, 15). The cars collided; Matgarito's Jetta was totaled; and Matgarito, Clementina, and Michelle were injured. (*Id*. at ¶¶ 12, 13, 16).

An officer soon appeared. Summerlin was cited for failing to yield the right of way; and Matgarito's Jetta was towed to Ewing Brother's auto-body center and auction house. (*Id*. at ¶¶ 13, 14). Matgarito, Clementina, and Michelle underwent surgery, which required both Matgarito and Clementina to miss work. (*Id*. at ¶ 16).

Subsequently, Matgarito's Jetta was auction for scrap. (*Id*. at ¶ 16). On November 3, 2011, Matgarito, Clementina, and Michelle filed a negligence action against Summerlin and Rockwell Collins.[3]

## II.     The Discovery Dispute

The parties are now in the midst of discovery. Plaintiffs are attempting to discover the factual basis of Rockwell Collins' four affirmative defenses. (*See* Pl.'s Mot. Compel (#49) at 2–4). Defendants, however, have repeatedly refused to disclose the factual basis underlying their affirmative defenses. (*Id*.)

On August 14, 2012, Plaintiffs served their first set of interrogatories on Rockwell Collins. (Pl.'s Mot. Compel (#49) at 2:4–8). But, Rockwell Collins' answers were allegedly deficient. (*Id*.) Between September 25, 2012, and January 22, 2013, Plaintiffs requested amended answers, provided Rockwell

---

[3] This court has jurisdiction under 28 U.S.C. § 1332(a)(2). There is no dispute that the amount in controversy exceeds $75,000.00 or that Defendants are citizens of Tennessee and Georgia, and Plaintiffs are "domiciliaries" of Nevada. (*See* Supplement (#61) at ¶¶ 1–4); *see also Napoles v. Johnson*, No. 12–C–10220, 2013 WL 1943304, at *2 (N.D. Ill. May 8, 2013) (discussing diversity jurisdiction under similar circumstances).

2

Collins with additional time to draft amended answers, and met and conferred with counsel for Rockwell Collins "several" times. (*Id*. at 2:9–18).

On January 22, 2013, Rockwell Collins substituted its former defense counsel with its present defense counsel. (*Id*. at 2:19). On April 15, 2013, defense counsel provided Plaintiffs with amended answers to Plaintiffs' first set of interrogatories. (*Id*. at 2:24–26). Rockwell Collins' amended answers, however, were still "not fully responsive" to Plaintiffs' questions because the answers did not "state the facts upon which [Rockwell Collins] based its affirmative defenses." (*Id*.)

Instead of moving to compel, Plaintiffs sought to discover the facts underlying Rockwell Collins' affirmative defenses by noticing the deposition of Rockwell Collins' Rule 30(b)(6) representative. (*Id*. at 2–3). On July 23, 2013, Plaintiffs deposed Rockwell Collins' Rule 30(b)(6) representative, Roger Ramos. (Def.'s Opp'n (#50) at 5:7–8). Ramos, however, was allegedly "gross[ly] underprepare[ed]." (Pl.'s Mot. Compel (#49) at 3:4). This, Plaintiffs argue, renders Ramos's answers "tantamount to a non-appearance." (*Id*. at 4:22). Additionally, Defense Counsel instructed Ramos to not answer several questions regarding the factual basis for Rockwell Collins' affirmative defenses because—Rockwell Collins argues—disclosing answers would violate the attorney-client and/or work product privilege. (*See* Mins. Proceedings #60).

On September 20, 2013, Rockwell Collins served its second amended responses to Plaintiffs' interrogatories. (*Id*. at 3:16–17). These responses, however, were "essentially unresponsive" to Plaintiffs' continued efforts to discover the factual basis underlying Rockwell Collins' affirmative defenses. (*Id*. at 3:18). Again, Rockwell Collins refused to answer Plaintiffs' interrogatories because they "call[] for disclosure of information that is protected by the attorney client privilege or the work product doctrine." (Second Amend. Ans. Interrog. (#49–11) Exhibit 11 at 3:2–4). Consequently, on

3

October 22, 2013, Plaintiffs filed the instant motion to compel; and, on November 8, 2013, Defendants filed the instant countermotion for sanctions (#51).

## LEGAL STANDARD

Federal Rule of Civil Procedure 30(b)(6) governs subpoenas directed to organizations. In pertinent part, Rule 30(b)(6) provides, "[t]he named organization must [] designate one or more officers . . . who consent to testify on its behalf. [. . .] The person designated must testify about information known or reasonably available to the organization." FED. R. CIV. P. 30(b)(6).

This provision imposes a duty on the corporation to educate its designee. 8A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2103 (3d ed.). The duty to educate encompasses "all information reasonably available to the responding organization." *Id*; *see also United States ex rel Fago v. M&T Mortgage Corp*., 235 F.R.D. 11, 25 (D. D.C. 2006) ("Although Rule 30(b)(6) requires a designated witness to thoroughly educate him or herself on the noticed topic, there must be a limit to the specificity of the information the deponent can reasonably be expected to provide."); *Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 539 (D. Nev. 2008) (citing *In re Vitamins Antitrust Litig*., 216 F.R.D. 168, 172 (D. D.C. 2003) (corporation is obligated to produce one or more Rule 30(b)(6) witnesses who are thoroughly educated about the noticed deposition topics and facts known to the corporation or its counsel)).

It is well established that Rule 30(b)(6)'s duty to educate "impose[s] considerable burdens." 8A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2103 (3d ed.). For instance, a Rule 30(b)(6) designee cannot "take the position that its documents state the company's position." *Great Am. Ins. Co. of New York*, 251 F.R.D. at 539 (citing *In re Vitamins Antitrust Litig*., 216 F.R.D. at 174). Similarly, a Rule 30(b)(6) designee's failure to provide knowledgeable answers is "tantamount to nonappearance," which warrants sanctions. *Great Am. Ins. Co. of New York*, 251 F.R.D. at 543 ("The

court finds Mr. Musso's inability to provide knowledgeable answers about the majority of the noticed deposition topics was tantamount to a nonappearance, and warrants sanctions.").

The reasons for this are twofold. First, the purpose of Rule 30(b)(6) is to "streamline" discovery by giving the corporation the benefit of choosing and preparing its deponent. *Id.* at 539; *see also* FED. R. CIV. P. 30(b)(6), Advisory Committee Notes, 1970 Amendments. Second, it curbs "bandying," whereby various corporate officers are deposed "but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to [the organization itself]." *Id.* (citing *Haney v. Woodward & Lothrop, Inc.*, 330 F.2d 940, 944 (4th Cir. 1964). Rule 30(b)(6), therefore, forces someone to come to the table who can speak knowledgably on behalf of the corporation.

Where, as here, a party moves to compel a Rule 30(b)(6) representative's testimony under Rule 37, the party resisting discovery bears the burden of persuasion. *U.S. Equal Emp't Opportunity Comm'n v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006) (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986)).

**DISCUSSION**

The court finds that Rockwell Collins violated its duties under Rule 30(b)(6). Rockwell Collins' designee was unprepared to answer questions regarding nine of Plaintiffs' noticed topics. Additionally, Defense Counsel abused the attorney-client privilege by instructing Rockwell Collins' designee to not answer relevant questions regarding discoverable information.[4] The seven topics are discussed below.

**I.    Rockwell Collins' Designee was Unprepared for Topic Four**

Topic four requested a person knowledgeable regarding the itinerary, purpose, and scope of Summerlin's trip to Las Vegas. Plaintiffs argue that Defendants' designee, Ramos, was unprepared

---

[4] Because Rockwell Collins admitted that it abused the attorney-client privilege (*see* Mins. Proceedings #60), Rockwell Collins' motion for sanctions (#51) is denied. (*See infra* note 5).

because Ramos was unaware what Summerlin did on a day-to-day basis and where Summerlin stayed while visiting Las Vegas. (*See* Pl.'s Mot. Compel (#49) at 6:17–19). In response, Defendants argue that Ramos was adequately prepared because he: (1) answered "all of the questions asked by Plaintiffs' counsel with the exception of a few" and (2) could not have known what Summerlin did on a day-to-day basis or where Summerlin stayed because "Field Service Engineers, like Summerlin, operated autonomously." (*See* Def.'s Opp'n (#50) at 10:19–20; 11:5–8).

Defendants' arguments are unpersuasive for two reasons. First, as Defendants' brief demonstrates, when Ramos answered questions regarding topic four, the answer addressed Rockwell Collins' polices and expectations regarding employee travel rather than the specific facts of Summerlin's trip. For instance, Ramos testified about: (1) the process of how Summerlin was assigned to his position in Las, Vegas; (2) travel procedures; (3) interactions between Summerlin and the customer; (4) the autonomous nature of Summerlin's position as a Field Service Engineer; (5) expected work hours; and (6) the amount of support Summerlin was expected to provide to the customer. (*See id.* at 10:8–14).

Second, as Plaintiffs' argue, Ramos was unable to state what Summerlin did on a day-to-day basis and where Summerlin stayed while visiting Las Vegas. (*See* Pl.'s Mot. Compel (#49) at 6:17–19). Defendants argue that Ramos should not be expected to answer these such questions because "Field Service Engineers, like Mr. Summerlin, operate[] autonomously when they [are] out supporting an end customer." (*See* Def.'s Opp'n (#50) at 11:5–8).

This argument is unpersuasive. Rule 30(b)(6) requires "[t]he persons designated [to] testify about information known or **reasonably available** to the organization." FED. R. CIV. P. 30(b)(6) (emphasis added). As a former employee of Rockwell Collins, what Summerlin did on a day-to-day basis and where he stayed while visiting Las Vegas as Rockwell Collins' employee is "reasonably available" to

6

Rockwell Collins. *See, e.g.*, *Great Am. Ins. Co. of New York*, 251 F.R.D. at 550; *Wilson v. Lakner*, 228 F.R.D. 524, 529 (D. Md. 2005) (stating that in cases involving former employees preparation is required from myriad sources, including "documents, present or past employees, or other sources").

The court, therefore, finds that Ramos was not adequately prepared to answer questions regarding topic number four.

**II.     Rockwell Collins' Designee was Unprepared for Topics Five and Six**

Topic number five requested a person knowledgeable of Rockwell Collins' policies, practices, and procedures regarding employee use of company vehicles for use on company business. Defendants argue that Ramos was "knowledgeable" regarding topic five, in part, because Ramos reviewed Rockwell Collins' intranet, read its insurance policies, and other documents related to the topic. (*See* Def.'s Opp'n (#50) at 12:22–23).

The court disagrees. Ramos's responses to Plaintiffs' questions repeatedly fell below the standard of "knowledgeable." Ramos's responses were often conditional and evasive:

> Q.   Are there written rules regarding the policies, practices and procedures of the company and how an employee is supposed to use automobiles on the company's behalf?
> A.   I **believe** there are. Yes.
> [ . . . ]
> Q.   [A]re you still the appropriate prepared witness to testify to that?
> A.   I **believe** so.
> Q.   [W]here [can I] go [to] find the rules of the company about how an employee is to use an automobile as it relates to his employment?
> A.   It would **possibly** be within my . . . field service handbook.
> Q.   Anyplace else in the company?
> A.   **Possibly**. [ . . . ]
> Q.   So when I ask for a witness that was knowledgeable about this, you didn't prepare for that did you? [ . . . ]
> A.   **Not specifically** to the question you're asking.

(Pl.'s Mot. Compel (#49) Ex. 25 at 177:19–23; 178:10–14; 178:22–179:14) (objections omitted; emphasis added).

7

Ramos was similarly unprepared to discuss topic six. Topic number six requested a person knowledgeable of Rockwell Collins' policies, practices, or procedures related to ensuring that its employees maintain safe driving records before operating an automobile in the course and scope of their employment. When Plaintiffs asked Ramos about topic six, he admitted that that he did not prepare for this topic:

> Q. You read this designation, right?
> A. Right.
> Q. Where do we go to find the policies, practices and procedures relating to this [*i.e.*, topic six]?
> A. [ . . . ] I would go find this within . . . our Intranet. Or I can even go to my field personnel coordinator. . .
> Q. Did you . . .?
> [ . . . ]
> A. I did not.

(Pl.'s Mot. Compel (#49) Ex. 25 at 181:15–182:3). This violates Rule 30(b)(6) as a matter of law. *See* FED. R. CIV. P. 30(b)(6) (stating that Rule 30(b)(6) designees "must testify about information known or reasonably available to the organization").

### III. **Rockwell Collins' Designee was Unprepared for Topics Seven, Eight, and Nine**

Topics seven, eight, and nine requested a person knowledgeable regarding the facts underlying Rockwell Collins' affirmative defenses. Ramos refused to answer questions regarding topics seven, eight, and nine on two grounds: (1) Defense Counsel direct Ramos not to answer questions because doing so would violate the attorney-client privilege and (2) Ramos claimed to have no responsive knowledge regarding these topics. (*See* Pl.'s Mot. to Compel (#49) Ex. 25 at 100–101).

Ramos's refusal to answer questions regarding topics seven, eight, and nine was inappropriate. First, it is well established that the attorney-client privilege protects communications, not facts. *LightGuard Sys., Inc. v. Spot Devices, Inc.*, 281 F.R.D. 593, 597 (D. Nev. 2012) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981). Defendants' filings argue that Plaintiffs' deposition

8

topics go beyond facts and "encroach on the strategy" and mental impressions of counsel. (Def.'s Opp'n (#50) at 18:22–23). As discussed during the court's January 24, 2014 hearing, this is not true. (*See* Mins. Proceedings #60).[5] Second, even if Plaintiffs' deposition sought privileged information, which it did not, Defendants should have notified Plaintiffs that they would be unable to produce a qualified Rule 30(b)(6) representative sometime before the deposition. *See, e.g.*, Fed. R. Civ. P. 1.

**IV      Rockwell Collins' Designee was Unprepared for Topic Ten**

Finally, Ramos was also unprepared to discuss topic ten. Topic ten requested a person knowledgeable regarding Rockwell Collins' policies, practices, and procedures for indemnifying or defending employees involved in traffic collisions resulting in claims for personal injury or property damage. In response to Plaintiffs' questions regarding topic ten, Ramos referred Plaintiffs to Rockwell Collins' bylaws. (Pl.'s Mot. Compel (#49) Ex. 25 at 108:23–25). This was inappropriate. It is well settled that Rule 30(b)(6) designee cannot "take the position that its documents state the company's position." *Great Am. Ins. Co. of New York*, 251 F.R.D. at 539 (citing *In re Vitamins Antitrust Litig.*, 216 F.R.D. at 174).

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

---

[5] Defense counsel conceded that Defendants abused the attorney-client privilege during the court's January 24, 2014 hearing. (*See* Mins. Proceedings #60). As a result, Defendants' motion for sanctions (#51) is denied. Defendants' motion for sanctions alleges that Plaintiffs inappropriately used the Rule 30(b)(6) deposition "to discredit the witness rather than elicit factual information relevant to this lawsuit." (*See* Def.'s Mot. for Sanctions (#51) at 19:7). Defendants' concession undermines the basis for Defendants' motion for sanctions.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Plaintiffs' motion to compel (#49) is GRANTED.

IT IS FURTHER ORDERED that Defendants serve Plaintiffs with responsive answers to Interrogatories 15 and 17 by Friday February 7, 2014.

IT IS FURTHER ORDERED that Defendants prepare a knowledgeable Rule 30(b)(6) designee to answer questions regarding Plaintiff's topics 4–10.

IT IS FURTHER ORDERED that Defendants' motion for sanctions (#51) is DENIED.

IT IS SO ORDERED.

DATED this 29th day of January, 2014.

_____

CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE